UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

TONYA HANNER,

                    Plaintiff,

v.

WESTCHESTER COUNTY; D.C. DIAZ;
WARDEN DELGROSSO; WARDEN
WATKINS; WARDEN VOLLMER;
SERGEANT GRAHAM; SERGEANT WOODS;
SERGEANT SIMMONS; SERGEANT OMESS;
C.O. MUNIZ; ARAMARK; MANNY
MENDOZA; SHARON WATKINS
(MANAGER); PENNY DOE (COOK); CRAIG
DOE (COOK); KOFI DOE (COOK); CORRECT
CARE SOLUTIONS; DOCTOR UJOA;
DOCTOR MALMA (OBGYN); DOCTOR
ROTH; DOCTOR PARKS; 3 JANE DOE; and 1
JOHN DOE,

                    Defendants.
-------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 7610 (VB)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-11-17

Copies Mailed/Faxed 12-11-17
Chambers of Vincent L. Briccetti

Briccetti, J.:

Plaintiff Tonya Hanner,[1] proceeding pro se and in forma pauperis, brings this action

under 42 U.S.C. § 1983, alleging defendants violated her constitutional rights at Westchester

County Jail ("WCJ").

Now pending are (i) defendants Correct Care Solutions, Doctor Malma, Doctor Parks,

Doctor Roth, and Doctor Ujoa's motion to dismiss the complaint pursuant to Rule 12(b)(6) (Doc.

#53); and (ii) defendants Aramark and Westchester County's motion, on behalf of themselves

and their employees, to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #57).

---

[1]    When the complaint was originally filed there were three plaintiffs, Candace Brown,
Tonya Hanner, and Carla Scott. By Orders dated December 27, 2016, and July 11, 2017, the
Court dismissed plaintiffs Brown and Scott pursuant to Rule 41(b) of the Federal Rules of Civil
Procedure for failure to prosecute or comply with a Court order. (Docs. ##14, 73). As a result,
Hanner is the only plaintiff remaining in the case.

1

For the reasons set forth below, the motions are GRANTED. However, plaintiff is granted leave to file an amended complaint, with the limitations explained below.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint as true, and draws all reasonable inferences in plaintiff's favor.

The body of plaintiff's complaint consists largely of fragment or run-on sentences assembled together in one continuous paragraph. (See Compl. at 23-25).[2] The topics change from one sentence to the next, making it difficult to decipher her claims. In addition, plaintiff attaches to the complaint more than 100 pages of documents in no apparent order, and has submitted a 113-page opposition to the motions to dismiss. Nevertheless, the Court—having thoroughly reviewed all of these materials—gathers that plaintiff's complaint consists of five essential allegations, all of which took place between May 2015 and September 2016 at WCJ.

First, plaintiff alleges she has documented health-related food restrictions, but that the Aramark and WCJ defendants did not adhere to those restrictions. In particular, she alleges she was routinely served "mechanically separated meat," or white, pink, or red "slime," which plaintiff alleges does not contain sufficient nutrients and causes certain health problems. (Compl. at 23-24). She alleges Aramark is "passing off" meat that contains gluten as gluten-free meat. (Id. at 31). In addition, plaintiff alleges during the month of Ramadan, she was given breaded chicken, red meat, bread, and cereal and milk, despite being on gluten-free, no-dairy,

---

[2]     The complaint is filed on the Court's electronic docketing system as four separate documents—the complaint itself, plus three exhibits. However, the hand-written pagination at the bottom of each page continues from one document to the next. Accordingly, for clarity purposes, the Court cites the hand-written page-numbers in this Opinion.

and no-red meat restrictions. Plaintiff also alleges she is served eggs more frequently than she should be because she has high cholesterol. She also alleges she was served moldy oranges. She alleges broadly that Westchester County[3] is "not taking [her] diet restriction seriously." (Id. at 30).

Second, plaintiff alleges certain "minimum standards" with regard to food preparation are not being met. (Compl. at 24). In particular, she alleges the food is sometimes served cold, sits for hours, "comes through a fly and roach infested tunnel," and is "brought through a garbage areas and the wagons ha[ve] mold on them." (Id. at 23).

Third, plaintiff complains the grievance process "is a joke" that is "designed to fail" because her grievances routinely are denied despite presenting facts she claims support her allegations. (Compl. at 23). She further alleges certain defendants have lied or altered documents when responding to her grievances. Plaintiff also claims Aramark retaliated against her for having filed several grievances related to the food at WCJ. In particular, plaintiff alleges she was "harassed," served unappetizing food including "peanut[ ]butter over hot rice w/ carrots & cottage cheese (cold) w/hot rice and carrots," and restrictions were placed on what she could purchase from the commissary. (Compl. at 31, 35). In her opposition, plaintiff further alleges she had been receiving "chicken w/bone lunch and dinner" until defendants were served with her complaint at which point she began receiving "mechanically separated meat" again. (Opp'n ¶ 17).

Fourth, plaintiff alleges she has been denied adequate medical treatment. In particular, plaintiff alleges she has not received treatment for varicose veins, she was denied a colonoscopy,

---

[3]     By Order of Service dated December 7, 2016, the Court substituted Westchester County as a defendant in the place of the Department of Corrections. (Doc. #11).

and she has not been treated by an OBGYN in over twelve months, despite the fact that she has fibroids "which causes severe pain." (Compl. at 25). She further alleges she "need[s] a hysterectomy" (id. at 28) and she has been denied medical treatment for a mole that has "gotten bigger and darker." (Id. at 67).

Finally, plaintiff alleges her rights under the the Health Insurance Portability and Accountability Act ("HIPPA") were violated. In particular, she alleges Sgt. Simmons was provided with plaintiff's medical information "without [plaintiff's] consent" in violation of HIPPA. (Compl. at 24; see also id. at 54).

Plaintiff alleges that, as a result of the foregoing, she has suffered "unb[ear]able pain in [her] lower abdomen, incontinence, sever[e] bleeding monthly, Hysterectomy refused suffered 16 months increased in anxiety, redress, panic attacks, high cholesterol and paranoid about the food, collapse veins, swollen legs w/ pain." (Compl. at 9).

Plaintiff's complaint lists 61 "causes," which essentially reiterate the facts summarized above or add differently stated facts related to the same topics. (See Compl. at 28-33).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.    Plaintiff's Constitutional Claims

Defendants argue plaintiff has failed adequately to plead her constitutional rights were violated. As explained below, the Court agrees plaintiff's allegations are deficient. However, because a liberal reading of plaintiff's complaint indicates valid constitutional claims might be stated, and because plaintiff has not previously been granted an opportunity to amend her

complaint, the Court grants plaintiff leave to file an amended complaint and replead her constitutional claims to the extent she can do so clearly, concisely, truthfully, and plausibly.

A.  Food-Related Claims

First, plaintiff appears to assert a violation of her Eighth Amendment right to humane conditions because she was denied food compliant with her dietary restrictions and because some of the food served at WCJ was allegedly rotten or otherwise unhealthy.

The Eighth Amendment requires prison conditions to be at least "humane." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To allege an Eighth Amendment violation, an inmate must satisfy objective and subjective elements of a two-pronged test: "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that [she] was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety.'" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)).

Regarding the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [her] health." Walker v. Schult, 717 F.3d at 125 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). Plaintiff thus must allege prison officials deprived her "of her 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (quoting Rhodes v. Chapman, 452 U.S. at 347). When a plaintiff seeks to combine individual deprivations, the sum equates a conditions of confinement claim only if the composite conditions "have a mutually enforcing effect that produces the deprivation of a single,

identifiable human need." Wilson v. Seiter, 501 U.S. 294, 304 (1991) (stating that holding prisoners in cold cells without blankets may constitute a violation).

With respect to the subjective requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. at 837 (emphasis added).

"[Although] no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights," the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks and citation omitted).

Here, plaintiff alleges she suffers pain, incontinence, high cholesterol, anxiety, paranoia, varicose veins, and painful swelling in her legs. (See Compl. at 9). She also alleges the food and nutrition issues are "life threatening" (id. at 24), the "mechanical separate meat" she was served gave her "trouble with inco[]ntinence" (id. at 30), and the meat is "potentially hazardous" and is "putting [her] at risk." (Id. at 35). In addition, plaintiff alleges "red meat is unhealthy for anybody and especially for" plaintiff, whose "medical history is the reason and [her] body [doesn't] process food like it should," and that is "why [she] can't eat a lot of the food [at WCJ] [be]cause it [doesn't] agree with [her], it causes pain." (Id. at 37). In her opposition, plaintiff states she "was diagnosed in 2017 with a hernia . . . [a]fter suffering for over 13 months of pain pushing and straining to use the bathroom." (Opp'n at Ex. A). She also alleges she suffers from medical issues that seem unrelated to her food consumption, such as varicose veins, swollen legs, and "sever[e] bleeding monthly." (Compl. at 9).

7

These allegations are largely conclusory and dispersed throughout the complaint and opposition in such a way as to make it difficult to comprehend which health issues plaintiff attributes to the food at WCJ, and why she attributes those health issues to the food as opposed to other factors, such as her pre-existing health conditions.

Moreover, plaintiff's allegations regarding Aramark employees' reasons for giving her food inconsistent with her dietary restrictions do not rise to deliberate indifference. For example, plaintiff alleges Aramark is "not following [its] own Glu[]tin Free restricted Diet," and it "do[esn't] take diet restrictions seriously." (Compl. at 47). These allegations do not suggest recklessness on the part of defendants, or anything more than mere negligence. If anything, the documents attached to plaintiff's complaint suggest Aramark served plaintiff meals it considered consistent with her dietary restrictions but she disagreed with their determination of what fell into that category. (See, e.g., Compl. at 161 (Sgt. Woods "spoke to the Aramark Food Services Director . . . who [told him] that all meats served to the inmate population meet[] all requirements set by minimum standards.")).

Accordingly, plaintiff's Eighth Amendment conditions of confinement claim is dismissed, but with leave to replead.[4]

---

[4]     The Court declines to construe a First Amendment religious freedom claim on the basis of plaintiff's allegation that "[d]uring [the] Holy month of Ramadan [her] Diet restrictions were being violated." (Compl. at 24). It is clear from the complaint plaintiff takes issue with the fact that she was given "a Muslim diet" during Ramadan even though it was inconsistent with her medical diet. (Id. at 38). In other words, she is complaining that she received a religious diet, not that she was denied that right.

B.    First Amendment Retaliation Claim

Next, plaintiff's complaint, liberally construed, might also be said to contain a First

Amendment retaliation claim, on the basis of defendants' conduct toward her after she filed

grievances regarding the food at WCJ and this lawsuit.[5]

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the

following: (1) that the speech or conduct at issue was protected, (2) that the defendant took

adverse action against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)

(internal quotation marks omitted).  To satisfy the causal connection prong, plaintiff must allege

"the conduct was a substantial or motivating factor for the adverse actions." Bennett v. Goord,

343 F.3d 133, 137 (2d Cir. 2003).

The filing of a grievance and lawsuit is considered speech protected under the First

Amendment.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a

prisoner for pursuing a grievance violates the right to petition government for the redress of

grievances guaranteed by" the First Amendment "and is actionable under § 1983.").

---

[5]      Plaintiff also appears to allege a procedural due process claim based on the rejection of
her grievances.  (See, e.g., Opp'n at 46).  In particular, plaintiff alleges certain WCJ defendants
"conspire[d]" to cover up facts and that they never spoke to a witness to some events (Compl. at
28), and "change the date on [plaintiff's] grievance." (Id. at 29).  She also alleges the WCJ
defendants did not respond to certain grievances.  (See Opp'n at 46).  These allegations are
plainly insufficient to state a procedural due process claim.  Chase Grp. Alliance, LLC v. City of
N.Y. Dep't. of Fin., 620 F.3d 146, 150 (2d Cir. 2010) (procedural due process requires "'that a
deprivation of life, liberty, or property be preceded by notice and opportunity for hearing
appropriate to the nature of the case'") (quoting Cleveland Bd. Of Educ. V. Loudermill, 470 U.S.
532, 542 (1985)).  The same is true of plaintiff's allegation that she was placed in keep lock for
23 hours after having been allegedly falsely accused of stating a profanity to a corrections
officer.  (See Opp'n at 40).  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) ("restrictive
confinements of less than 101 days do not generally raise a liberty interest warranting due
process protection, and thus require proof of conditions more onerous than usual").

9

However, "because prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' we are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d at 137 (quoting Dawes v. Walker, 239 F.3d at 491).

Here, plaintiff alleges she was "harassed" (Compl. at 35) and served unappetizing food, restrictions were placed on what she could purchase from the commissary, and she was served "mechanically separated meat" again after defendants were served with her complaint in this action. (Opp'n ¶ 17).

These allegations are insufficient as a matter of law to constitute "adverse action" on the part of defendants. As the Second Circuit has stated, "adverse action" is defined "objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks omitted). It is not plausible the actions plaintiff alleges defendants took after she filed grievances and this lawsuit objectively would have deterred a similarly situated prisoner from filing additional grievances or pursuing a lawsuit.

Accordingly, plaintiff's First Amendment retaliation claim is dismissed, but with leave to replead. To be clear, plaintiff is granted permission to amend this claim, but she is not required to do so.

C.    Inadequate Medical Care Claim

Defendants Correct Care Solutions and the individual medical professional defendants argue plaintiff's complaint fails plausibly to allege a constitutional claim on the basis of inadequate medical care.

The Court agrees.

To assert a constitutional claim for inadequate medical care under Section 1983, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: (i) the alleged deprivation of medical care must be "sufficiently serious" (i.e., the objective component), and (ii) the officials in question must have acted with a "sufficiently culpable state of mind" (i.e., the subjective component). Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

To satisfy the objective component of a claim for deliberate indifference to medical needs, plaintiff must allege, first, she "was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279. Second, plaintiff must allege the "inadequacy in medical care is sufficiently serious," id. at 280, e.g., "one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted).

With respect to the subjective component, "[d]eliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result[,] and entails more than mere negligence." Salahuddin v. Goord, 467 F.2d at 280 (internal quotation marks omitted).

Here, plaintiff alleges several procedures she believed she required were not provided. For example, she alleges she was denied a colonoscopy, was not treated by an obstetrician-gynecologist, needs a hysterectomy, and has been denied medical treatment for a mole that has "gotten bigger and darker." (Compl. at 67). However, plaintiff has failed to allege that the decisions to deny these treatments were made with deliberate indifference. Moreover, it appears

11

some of the treatments she sought have since been provided. For example, plaintiff attached to her opposition results from a colonoscopy. (See Opp'n at Ex. A).

Accordingly, plaintiff's deliberate indifference to medical needs claim is dismissed, but with leave to replead. Again, plaintiff is granted permission to amend this claim, but she is not required to do so.

III.    Exhaustion

Defendants WCJ and Aramark argue it is apparent from the face of the complaint that plaintiff has failed to exhaust her administrative remedies and that plaintiff did not file any grievances against Aramark.

The Court disagrees.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). However, only those remedies that are "available" to the prisoner may be exhausted. Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (citing Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)).

Here, plaintiff submitted with her complaint approximately 35 responses to grievances she filed (see Compl. at 11-16, 114-115, 120-123, 134, 136, 141-142, 144, 148, 151-153, 160-167, 182- 183), including several decisions from the State Commission of Correction denying her appeals. (Id. at 11-16). In addition, plaintiff stated in at least two letters to prison officials

12

that she had "griev[ed] Aramark" (see e.g., id. at 47) and she alleges she "exhausted all of [her]

administrative remed[ies]." (Opp'n at 4).

Based on the foregoing, the Court declines to dismiss the complaint on exhaustion

grounds on the present record at this early stage of the case. However, if appropriate after

discovery is complete, defendants may renew this argument at the summary judgment stage.

IV.    Monell Claim

Aramark and WCJ argue plaintiff has failed plausibly to allege they are liable under

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The Court disagrees.

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."

Monell v. Dep't of Soc. Servs, 436 U.S. at 691. Instead, "'[t]o hold a city liable under 1983 for

the unconstitutional actions of its employees, a plaintiff is required to plead and prove three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right.'" Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2009)

(quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

"To allege such a policy or custom, a plaintiff may assert one of the following: (1) the

existence of a formal policy officially endorsed by the municipality; (2) actions taken or

decisions made by municipal officials with final decision making authority, which caused the

alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it

constitutes a custom of which constructive knowledge can be implied on the part of the

policymaking officials; or (4) a failure by policymakers to properly train or supervise their

subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact

with the municipal employees." Guzman v. United States, 2013 WL 5018553, at *3 (S.D.N.Y. Sept. 13, 2013) (internal quotation marks omitted).[6]

Here, plaintiff alleges the formal policies put in place by defendants Aramark and WCJ—and implemented by their employees—regarding inmate dietary restrictions and the grievance process subjected her to violations of her constitutional rights. Accordingly, at this stage, the Court declines to dismiss either defendant on Monell grounds.[7]

## V.  Monetary Damages and Injunctive Relief

WCJ is correct that plaintiff's claims for monetary damages against defendants acting in their official capacities are barred by the Eleventh Amendment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, all monetary damages claims against the individual defendants acting in their official capacities are dismissed; monetary claims against the individual defendants in their individual capacities may proceed.

In addition, any claims for injunctive relief related to WCJ are dismissed as moot because plaintiff is no longer housed at WCJ. See Muhammad v. City of New York Dep't of Corr., 126

---

[6]     Because plaintiff is proceeding pro se, she will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[7]     Aramark also argues all Section 1983 claims should be dismissed as to it because "it cannot be considered [a] state actor[] and [is] therefore not subject to §1983 liability." (Aramark Br. at 15). The Court disagrees. "For the purposes of [Section] 1983, the actions of a nominally private entity are attributable to the state when: . . . when the entity 'has been delegated a public function by the [s]tate.'" Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001)). Here, "[b]ecause providing food to inmates is a public function . . . and because Plaintiff's [complaint] relates to the meals that Aramark, acting as the state's culinary surrogate, provided to the prisoners," Torres v. Aramark Food, 2015 WL 9077472, at *6 (S.D.N.Y. Dec. 16, 2015), the Court concludes the complaint plausibly alleges Aramark is a state actor.

F.3d 119, 123 (2d Cir. 1997) (injunctive relief claims became moot when plaintiff was released from prison because he "lack[ed] any continuing personal stake in the outcome" of the case).

VI.     Correct Care Solutions

Defendant "Correct Care Solutions" argues it is not a proper party in this case and that instead any claims against it should be brought against New York Correct Care Solutions Medical Services, P.C. ("NYCCSMS"). In the absence of any opposition on this point from plaintiff, the Court directs plaintiff to name NYCCSMS as a defendant instead of "Correct Care Solutions" in her amended complaint, should she decide to pursue her claims against this entity.

VII.     State Law Claims

Defendants argue the Court should either dismiss or decline to exercise supplemental jurisdiction over any plausible state law claims asserted in the complaint. Because the Court is granting plaintiff leave to file an amended complaint, it declines to entertain those arguments at this time. They may, however, be renewed, if and when defendants move to dismiss the amended complaint.

VIII.     Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).

However, leave to amend may "properly be denied for . . . futility of amendment."

Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371

U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v.

Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, because a liberal reading of plaintiff's complaint indicates valid claims might be

stated, and because plaintiff has not previously amended her complaint, the Court grants plaintiff

leave to file an amended complaint and replead her claims—namely, the Eighth Amendment

food-related conditions of confinement claim, the First Amendment retaliation claim, and the

inadequate medical care claim—to the extent she can do so clearly, concisely, truthfully, and

plausibly.

To the greatest extent possible, plaintiff's amended complaint must address the

deficiencies identified in this Opinion and Order and must:

1. describe all relevant events, stating the facts that support plaintiff's case including

what each individual defendant did or failed to do;

2. include a more chronological and clear explanation of what health issues she

attributes to the food at WCJ and the basis for that conclusion;

3. include any details she may provide regarding why she believes Aramark or any

of its employees gave her food that was inconsistent with her dietary restrictions;

4. give the dates and times of each relevant event or, if not known, the approximate

date and time of each relevant event; and

5. describe how each defendant's acts or omissions violated plaintiff's rights and

describe the injuries plaintiff suffered as a result of those acts or omissions.

Essentially, the body of plaintiff's amended complaint must tell the Court: who violated her federally protected rights; what facts show that her federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

**Finally, the amended complaint will completely replace, not supplement, the existing complaint. Therefore, plaintiff must include in the amended complaint all information necessary for her claims.** However, plaintiff is directed to include in her amended complaint only those facts and documents she believes plausibly support a violation of her constitutional rights. Plaintiff shall not burden the Court with extraneous medical information or documentation of issues that are constitutionally insignificant or have already been resolved. Finally, plaintiff is advised that it is in her interest to include only those claims that are truly significant. She should keep in mind that the inclusion of constitutionally insignificant quibbles tends to distract from potentially valid claims.

## CONCLUSION

Defendants' motions to dismiss are GRANTED.

Plaintiff is granted leave to file an amended complaint with the limitations described herein. Plaintiff shall use the Amended Complaint form attached hereto.

**Plaintiff shall file her amended complaint by no later than January 25, 2018. If plaintiff fails to comply with this Order, the case may be dismissed for failure to prosecute or failure to comply with a court order. Fed. R. Civ. P. 41(b).**

Finally, the Court reminds plaintiff of her obligation to notify the Court in writing if her address changes. The Court may dismiss the case if plaintiff fails to do so.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions. (Docs. ##53, 57).

Dated: December 11, 2017
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. _____

(To be filled out by Clerk's Office)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name       Middle Initial       Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City       State       Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____
_____
_____
_____

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____