UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TONYA HANNER,  :
              Plaintiff,  :
                :
v.  :        Copy Mailed by Chambers 3-21-19 DH
                :
WESTCHESTER COUNTY; DEPARTMENT  :
OF CORRECTIONS; ARAMARK; NYS  :        **OPINION AND ORDER**
CORRECT CARE SOLUTIONS; D.C. DIAZ;  :
WARDEN DELGROSSO; WARDEN  :        16 CV 7610 (VB)
WATKINS; WARDEN VOLLMER;  :
SERGEANT GRAHAM; SERGEANT  :
SIMMONS; PENNY STEWART; SHARON  :
WATKINS; MANNY MENDOZA; KOFFI  :
TSOGBE; CRAIG BOISSY; DR. ULLOA; and  :
DR. AMELEMAH,  :
              Defendants.  :
----------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Tonya Hanner, proceeding pro se and in forma pauperis, brings claims under 42 U.S.C. § 1983 against Westchester County, Department of Corrections, Aramark, NYS Correct Care Solutions ("CCS"), D.C. Diaz, Warden Delgrosso, Warden Watkins, Warden Vollmer, Sergeant Graham, Sergeant Simmons, Penny Stewart, Sharon Watkins, Manny Mendoza, Koffi Tsogbe, Craig Boissy, Dr. Ulloa, and Dr. Amelemah.[1] Liberally construed, plaintiff's amended complaint asserts Eighth Amendment claims for deliberate indifference to serious medical needs and inhumane conditions of confinement, and a First Amendment retaliation claim.

---

[1] Plaintiff sued Penny Stewart as "Penny, Cook"; Sharon Watkins as "Sharon, Manager"; Manny Mendoza as "Mensoza, Cook"; Koffi Tsogbe as "Koffi.Cook"; Craig Boissy as "Craig.Cook"; Doctor Ulloa as "Dr.Ulljoa"; and Doctor Amelemah as "Dr. Malma." In addition, CCS claims it is not a proper party. As the Court dismisses all claims against CCS, the Court need not address CCS's argument. Moreover, plaintiff's claims against the Department of Corrections are dismissed for the reasons stated in the Court's December 7, 2016, Order of Service. (Doc. #11 at 2).

1

Now pending are defendants' motions to dismiss the amended complaint pursuant to Rule 12(b)(6). (Docs. ##86, 89).

For the reasons set forth below, the motions are GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

At all relevant times, plaintiff was a convicted and sentenced prisoner at the Westchester County Jail ("WCJ"). (Doc. #84 ("Am. Compl.") at 2).[2]

I.   Procedural History

Plaintiff initially filed this action on September 26, 2016, along with two other plaintiffs. The Court dismissed the other two plaintiffs pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute or comply with a Court Order. Defendants then moved to dismiss plaintiff's complaint for failure to state a claim.

The Court granted defendants' motions to dismiss the complaint in an Opinion and Order dated December 11, 2017 (the "December 11 Opinion"). Hanner v. Westchester County, 2017 WL 6352261 (S.D.N.Y. Dec. 11, 2017).[3] Plaintiff's complaint, consisting of over 100 pages of documents in no apparent order and topics changing from one sentence to the next, was difficult to decipher. Id. at *1. Nevertheless, the Court liberally construed plaintiff's complaint as

---

[2]   "Am. Compl. at __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[3]   Because plaintiff is proceeding pro se, she will be provided with copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

asserting five essential allegations: (i) Aramark and WCJ did not adhere to plaintiff's health-related food restrictions; (ii) defendants were not meeting minimum standards of food preparation; (iii) the grievance process was a "joke" and designed to fail; (iv) plaintiff was denied adequate medical treatment; and (v) plaintiff's rights under the Health Insurance Portability and Accountability Act ("HIPAA") had been violated. Id. at *2.

The Court analyzed plaintiff's food-related allegations under the Eighth Amendment standard for claims asserting inhumane conditions of confinement and held plaintiff's allegations were insufficient to state a claim. Hanner v. Westchester County, 2017 WL 6352261, at *3–5. The Court also declined to construe a First Amendment religious freedom claim on the basis of plaintiff's allegation that she was given a religious diet despite not having asked for one. Id. at *5 n.4. Further, the Court held plaintiff's grievance-related allegations were insufficient to state either a First Amendment retaliation claim or a Fourteenth Amendment due process claim. Id. at *5–6 & 5 n.5. Finally, the Court held plaintiff's allegations regarding medical treatment were insufficient to state a deliberate indifference claim. Id. at *6–7.

The Court granted plaintiff leave to replead her Eighth Amendment food-related conditions of confinement and deliberate indifference to serious medical needs claims, as well as her First Amendment retaliation claim, to the extent plaintiff could do so "clearly, concisely, truthfully, and plausibly." Hanner v. Westchester County, 2017 WL 6352261, at *9. Moreover, the Court identified the deficiencies in plaintiff's complaint and ordered plaintiff to address them in her amended complaint. Id. at *9.

On April 2, 2018, plaintiff timely filed her amended complaint.

II.     Factual Background

The amended complaint, which asserts substantially the same allegations as the initial complaint, can be divided into three categories: allegations concerning plaintiff's (i) deliberate indifference to serious medical needs claims, (ii) food-related conditions of confinement claims, and (iii) First Amendment retaliation claim.[4]

Regarding plaintiff's deliberate indifference to serious medical needs claims, plaintiff alleges three medical conditions to which defendants allegedly were deliberately indifferent. First, plaintiff alleges she has severe, protruding, and discolored varicose veins in her legs. Plaintiff alleges she saw a vascular specialist, who recommended surgery. Nevertheless, according to plaintiff, Dr. Ulloa and Dr. Amelemah refused to authorize the surgery.

Second, plaintiff alleges she has fibroids for which Dr. Amelemah allegedly told plaintiff she needed a hysterectomy. However, according to plaintiff, Dr. Amelemah refused to take "the necessary protocol" for plaintiff to undergo the procedure. (Am. Compl. at 45). Moreover, according to plaintiff, Dr. Amelemah also refused to give plaintiff a pap smear to diagnose or treat the fibroids.

Third, plaintiff alleges she has severe incontinence, but it took seven months before she received a colonoscopy to treat her condition. Moreover, plaintiff alleges "NYSCCS did not follow the recommended treatment for prep," resulting in two failed attempts at performing the colonoscopy. (Am. Compl. at 46).

---

[4]     As in the Court's December 11 Opinion, the Court declines to construe a First Amendment religious freedom claim on the basis of plaintiff's allegation that she was given a religious diet despite not requesting one. See Hanner v. Westchester County, 2017 WL 6352261, at *5 n.4.

4

As to plaintiff's food-related claims, plaintiff asserts she "was prescribed a medical diet" in which she was not permitted to eat gluten, soy, fish, dairy, or turkey. (Am. Compl. at 7). Plaintiff alleges she was served food in violation of her diet—including gluten, farina, fish, cold-cuts, soy peanut butter over hot rice with carrots, and spoiled cottage cheese with hot rice and carrots—as well as other allegedly deficient food, including potatoes with a staple in them and cake with a wood chip inside. Plaintiff also alleges she was served moldy oranges and "Potentially Hazardous Mechanically Separated Meat" that was poorly prepared, barely cooked, red inside, and bloody. (Id.). Plaintiff alleges the mechanically separated meat contributed to her incontinence.

Plaintiff also alleges food was brought to her through a tunnel with dead water bugs and mice droppings. In addition, in one grievance attached to her amended complaint, plaintiff alleges defendant Penny Stewart refused to feed her twice in two days, and instead gave her wet beans and rice. Finally, plaintiff attached to her amended complaint a Westchester County Department of Corrections "Diet Status" table, which states plaintiff is supposed to receive a Muslim diet. (Am. Compl. at 34).

Finally, regarding plaintiff's retaliation claim, plaintiff alleges "Aramark" and "the Westchester County Jail" retaliated against her for her filing 390 complaints by serving her food that was not suitable for her diet and mechanically separated meat. (Am. Compl. at 79).

**DISCUSSION**

I. Legal Standard

    A. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

5

Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation omitted) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

B.     Documents Considered

The Court will not consider the medical records CCS, Dr. Ulloa, and Dr. Amelemah submitted in support of their motion to dismiss the amended complaint.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). The Court may also consider matters of which judicial notice may be taken. Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999).

Here, plaintiff did not rely on the medical records CCS, Dr. Ulloa, and Dr. Amelemah submitted in support of their motion to dismiss. Nor do those defendants provide any reasoning for their plainly meritless contention that the Court should take judicial notice of the medical records. They also do not request that the instant motion be converted into a motion for summary judgment under Rules 12(d) and 56.

Therefore, the Court will not consider these medical records in deciding the instant motion.

II.     Deliberate Indifference to Serious Medical Needs

Plaintiff's deliberate indifference to her serious medical needs claims fail because plaintiff fails to allege Dr. Ulloa, Dr. Amelemah, or any other defendant acted with sufficient mens rea.[5]

A claim for deliberate indifference brought by a convicted prisoner is analyzed under the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state an Eighth Amendment claim for deliberate indifference, a plaintiff's allegations must satisfy an objective prong and a mens rea prong. Thus, to assert a claim for deliberate indifference to medical needs under the Eighth Amendment, plaintiff must plead facts alleging (i) a "sufficiently serious" deprivation of medical care, and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 845–47 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

If the offending conduct is the medical treatment itself, however, "the seriousness inquiry is narrower." Salahuddin v. Goord, 437 F.3d at 280. When "the prisoner is receiving

---

[5]     Plaintiff also alleges Sgt. Simmons violated HIPAA by contacting CCS to investigate plaintiff's food-related restrictions. "HIPAA does not provide for either an express or implied private right of action." Rosado v. Herard, 2014 WL 1303513, at *4 (S.D.N.Y. Mar. 25, 2014) (internal quotation omitted) (collecting cases). Therefore, to the extent plaintiff alleges a HIPAA violation against Sgt. Simmons, that claim is dismissed.

8

appropriate on-going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

The mens rea component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38–39 (2d Cir. 2015) (summary order) (citing Farmer v. Brennan, 511 U.S. at 837).

"[N]egligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Id. "Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

First, plaintiff fails to allege any facts suggesting Dr. Ulloa or Dr. Amelemah was deliberately indifferent to plaintiff's medical needs in refusing to authorize surgery on plaintiff's

varicose veins. Plaintiff's allegations that Dr. Ulloa and Dr. Amelemah ignored her medical condition and refused to carry out a vascular specialist's orders to conduct surgery consist entirely of conclusory statements, such as that Dr. Ulloa and Dr. Amelemah "ignor[e]d my obvious conditions," and Dr. Ulloa "denied recommendation from Vascular Specialist." (Am. Compl. at 45–47). Indeed, plaintiff fails to allege any facts suggesting either physician was even involved in the treatment of plaintiff's varicose veins.

Moreover, even if the Court assumes the truth of plaintiff's conclusory assertion that Dr. Ulloa and Dr. Amelemah refused to authorize surgery on her varicose veins, plaintiff's allegations would still only constitute a mere disagreement over the proper treatment of her condition. The many clinician, physician, and nurses' notes attached to plaintiff's amended complaint demonstrate plaintiff's varicose veins were continuously treated through non-surgical treatment, such as through the use of compression stockings. In fact, plaintiff's amended complaint and the documents attached thereto show she visited a vascular clinic on March 5, May 28, and July 3, 2016, and a surgery clinic on January 8, 2016; saw consulting physicians on June 28 and August 23, 2017; and saw nurses or nurse practitioners on January 8, March 5, March 17, and July 3, 2016, all regarding treatment of her varicose veins.

Second, plaintiff's allegations against Dr. Amelemah concerning plaintiff's failure to receive a hysterectomy or pap smear for her fibroids likewise are insufficient to satisfy the <u>mens rea</u> prong. Plaintiff alleges only that Dr. Amelemah "never took the necessary protocol" so she could receive a hysterectomy and "refuse[d]" plaintiff a pap smear despite knowing she had fibroids. (Am. Compl. at 45). Plaintiff's allegations are again conclusory, as plaintiff fails to allege any facts suggesting Dr. Amelemah failed to take those actions despite inferring a substantial risk of serious harm to plaintiff.

Further, plaintiff's attachments to her amended complaint show plaintiff received treatment for her fibroids, and that plaintiff merely disagrees with the type of treatment she received. One outpatient referral request from February 2, 2016, shows an obstetrician-gynecologist ("OBGYN") "deferred" performing a pap smear, instead entering a diagnosis recommending health maintenance. (Am. Compl. at 70). Similarly, another outpatient referral request, from June 3, 2016, shows the OBGYN recommended an annual pap smear. The OBGYN's diagnoses, specifically regarding the timing of the pap smear, may not be to plaintiff's liking, but her disagreement with the OBGYN's recommendations are insufficient to state a claim for deliberate indifference.

Third, plaintiff's claim against Dr. Amelemah as to her incontinence also fails the mens rea prong. As with plaintiff's claims regarding treatment of her varicose veins and fibroids, plaintiff's allegations concerning Dr. Amelemah's state of mind are conclusory—plaintiff fails to allege she was referred to Dr. Amelemah for treatment of her incontinence or that Dr. Amelemah, who from plaintiff's other allegations appears to be an OBGYN, was qualified to treat plaintiff for incontinence. Further, documents attached to plaintiff's amended complaint show plaintiff did receive treatment for her incontinence. Plaintiff consulted with a gastroenterologist on multiple occasions and received a colonoscopy. And to the extent plaintiff's claim is based on the delay in receiving the colonoscopy, plaintiff fails to make any non-conclusory allegations suggesting any defendant acted with deliberate indifference in causing the delay.[6]

---

[6] Plaintiff also alleges "Aramark and NYCCS" refused to follow instructions in preparing plaintiff for her colonoscopy. (Am. Compl. at 46). Plaintiff fails to allege who failed to follow instructions; any facts suggesting any defendant did so with deliberate indifference to her serious medical needs; or any facts suggesting the failure to follow instructions resulted in a more severe medical condition, in particular because plaintiff did in fact receive a colonoscopy. Therefore, to

Accordingly, plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims are dismissed.

III.   Food-Related Claims

Plaintiff's food-related claims also must be dismissed because plaintiff fails to allege any defendant acted with sufficient mens rea.

As with plaintiff's claims for deliberate indifference to serious medical needs, plaintiff's allegations must satisfy an objective prong and a mens rea prong. See Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). To satisfy the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Id. at 125 (internal citations omitted)). Plaintiff must allege prison officials deprived her "of [her] 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (internal citations omitted). "Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Id. (internal quotation omitted).

With respect to the mens rea requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d 180, 185–86 (2d Cir. 2002) (internal citation omitted).

---

the extent plaintiff brings deliberate indifference claims against defendants for their failure properly to prepare her for a colonoscopy, such claims are dismissed.

The Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (internal quotation omitted). Further, "[c]ourts have held that allegations that a prisoner was served food contaminated or tainted by foreign objects . . . are sufficient to plead a constitutional violation." Ballard v. Lane, 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019) (internal quotation and alterations omitted) (collecting cases). In addition, the denial of a medically-prescribed diet may be a constitutional violation if that denial results in a sufficiently serious medical condition. See Houston v. Schriro, 2013 WL 4457375, at *7 (S.D.N.Y. Aug. 20, 2013) (collecting cases).

Here, plaintiff's allegations satisfy the objective prong. Plaintiff alleges, among other things, she was not served food that conformed to her medically-prescribed diet, thereby aggravating her incontinence; was served food that contained foreign objects, including a staple and a wood chip; and was served food in unsanitary conditions, such as in conditions involving dead bugs and mice droppings.

However, plaintiff has not satisfied the mens rea requirement, in particular because plaintiff fails to allege who served her the allegedly deficient food on any occasion. Indeed, throughout plaintiff's amended complaint, plaintiff merely alleges "Aramark" served her deficient, unsanitary, food that was not compliant with her diet. (See, e.g., Am. Compl. at 9). Plaintiff's principal allegations against specific defendants involve incidents in which she complained to defendants about the food, but, as discussed below, such supervisory liability claims fail because plaintiff must first state an underlying constitutional violation before bringing supervisory liability claims. See Raspardo v. Carlone, 770 F.3d 97, 129 (2d Cir. 2014)

13

("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability."). In fact, the only food-related allegation against a specific defendant is that Stewart twice refused to feed plaintiff, but plaintiff contradicts that allegation in the next sentence by stating Stewart gave her "beans and rice and my beans were not dry." (Id. at 41).

Further, grievance responses attached to plaintiff's amended complaint suggest that when WCJ officials learned of plaintiff's complaints, they attempted to address them. For instance, when plaintiff filed a grievance related to alleged moldy oranges, the grievance coordinator accepted the grievance and wrote, "Aramark Food Service Manager Manny Mendoza . . . stated that he was not aware of the situation, but will ensure that any such situation does not happen again." (Am. Compl. at 18). And when plaintiff complained that she received beans and no meat at lunch and dinner, the grievance coordinator accepted her grievance as it related to food and stated plaintiff would no longer receive beans as a substitute for protein.

Accordingly, plaintiff's Eighth Amendment food-related claims are dismissed.

IV.  First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation claim is dismissed for failure to allege an adverse action or causal connection.

To adequately plead a First Amendment retaliation claim, plaintiff must allege (i) she engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against her; and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Id. at 295 (quoting Davis v.

Goord, 320 F.3d 346, 352 (2d Cir. 2003)). Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id. (internal quotation omitted).

Regarding the first element, "[i]t is well-established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances' and is therefore actionable under Section 1983." Edwards v. Horn, 2012 WL 760172, at *14 (S.D.N.Y. Mar. 8, 2012) (quoting Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)) (adopting report and recommendation).

To satisfy the second element, an inmate must allege "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Edwards v. Horn, 2012 WL 760172, at *14 (quoting Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004)). An inmate may allege either a serious injury or "that he has been chilled from engaging in the First Amendment activities that triggered the retaliation." Id. (quoting Smith v. Maypes–Rhynders, 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009)).

As for the third element, plaintiff's allegations must support an inference that the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (internal citation omitted).

Plaintiff alleges defendants retaliated against her for filing complaints by not serving food that was suitable to her medical diet. As this Court held in its December 11 Opinion, and reiterates here, plaintiff's allegations are insufficient to constitute an adverse action, as they would not deter a similarly situated individual of ordinary firmness from exercising constitutional rights. Hanner v. Westchester County, 2017 WL 6352261, at *6.

Moreover, plaintiff fails to allege any facts suggesting a causal connection between her filing grievances and the allegedly deficient food. Plaintiff fails to identify a single defendant who retaliated against her, let alone allege facts suggesting an inference that her complaints were a substantial or motivating factor for any defendant in serving her food that was not compliant with her medical diet.

Accordingly, plaintiff's First Amendment retaliation claim is dismissed.

V.      Supervisory Liability and Monell Claims

Because plaintiff has not adequately pleaded an underlying violation of her constitutional rights, her Monell claim against Aramark and supervisory liability claims against D.C. Diaz, Warden Delgrosso, Warden Watkins, Warden Vollmer, Sergeant Graham, and Sergeant Simmons are dismissed. See Raspardo v. Carlone, 770 F.3d at 129 (supervisory liability); Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct" in declining to address Monell claim after finding no underlying constitutional violation).

VI.     Remaining Federal Law Claims

Plaintiff's claim pursuant to 42 U.S.C. § 1988 is plainly without merit, and therefore dismissed. Lefcourt v. Legal Aid Soc., 445 F.2d 1150, 1154 n.2 (2d Cir. 1971) (holding section 1988 "does not create a right of action in any situation").

Plaintiff's claims pursuant to Sections 1985 and 1986 are likewise dismissed because plaintiff fails to allege an underlying constitutional violation. See, e.g., Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").

VII.  State Law Claims

Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claims the amended complaint can be liberally read to assert.  See 28 U.S.C. § 1367(c)(3).

Plaintiff's state law claims, to the extent she asserts them, are dismissed without prejudice.

VIII.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation omitted).  District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).  "Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."  Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018) (internal citations omitted), appeal filed, No. 18-3677 (2d Cir. Dec. 10, 2018).

Here, the Court granted plaintiff leave to amend after granting defendants' motions to dismiss plaintiff's complaint.  Indeed, the Court specifically identified the deficiencies plaintiff would need to address in order to state claims for violations of her First and Eighth Amendment rights.  See Hanner v. Westchester County, 2017 WL 6352261, at *9.  Plaintiff failed to address those deficiencies, and "has not suggested [s]he is in possession of facts that would cure the

17

deficiencies identified in this opinion." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12.  Finally, the problems with plaintiff's claims are likely "substantive," such that "better pleading will not cure it."  Cuoco v. Moritsugu, 222 F.3d at 112.

Accordingly, the Court declines to grant plaintiff leave to amend a second time.

## CONCLUSION

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##86, 89) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 20, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge